DOCK BAINES v. THE STATE.

No. 2252. Decided February 21, 1901.

1. Alibi—Continuance—New Trial.

On a trial for assault with intent to murder, where the defense was alibi, and the court had overruled defendant's application for continuance for a witness by whom he expected to prove the alibi, and defendant, after conviction, made a motion for new trial based upon the error of the court in thus overruling and in support of this motion filed the affidavit of the proposed witness which directly and pertinently met the State's case and established the alibi for defendant. Held, that notwithstanding the State's case, although based upon circumstantial evidence, was exceedingly strong on the question of defendant's identity, the court erred in overruling the motion for new trial.

**2. Same—Practice on Appeal.**

Where the affidavit of an absent witness has been produced on the motion for a new trial showing absolutely that he would testify to the facts set up in an application for continuance (said facts being material, and diligence sufficient), the court on appeal will not assume the prerogative of saying that the testimony was not probably true, and thus usurp the functions of the jury. Brooks, J., dissenting.

APPEAL from the District Court of Erath. Tried below before Hon. J. S. STRAUGHAN.

Appeal from a conviction of assault with intent to murder; penalty, six years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder Minnie Freeman, on the 9th of August, 1900.

Minnie Freeman was defendant's wife's sixteen-year-old sister. From her testimony as a witness in the case, defendant seems to have fallen in love with her. He made frequent demonstrations of his love and proposed to leave his wife and children and run off with her. She repelled all his advances, and he became satisfied that she loved and perhaps was engaged to a young man who was her neighbor. This was his motive for attempting to take her life, according to the State's theory. She had no other enemy, and no other person was shown to have a motive to injure her. Defendant lived several miles from where Miss Freeman lived. She was shot in the yard to her father's house between the hours of 8 and 9 o'clock on the night of August 9th. She and her mother had gone into the yard in search of a piece of plank which they needed in making a shelf to a cupboard in the house. Minnie was carrying a lighted glass lamp when she was shot, and the lamp was shattered by the shot. The weapon used by the party doing the shooting was a shotgun. The shot penetrated both of her legs above the knees. The doctor who attended her extracted sixteen of the twenty-nine shot from her legs. There were three sizes of shot, to wit, numbers 6, 4, and 2, B. B. shot.

L. H. Bramlett, a witness, testified that on the 8th of August he loaned defendant his muzzle-loading shotgun, defendant saying he wanted it to kill wolves with. At the same time he loaned defendant ammunition to load the gun with, consisting of powder, caps, and three sizes of shot, being numbers 6, 4, and 2. When defendant returned the gun, on the morning of the 10th of August, it had recently been discharged. Defendant told witness that some one had shot Miss Freeman last night. The officers and other parties found pieces of the newspaper which had been used as wadding in loading the gun near the place where the would-be assassin had fired his gun, from the outside of the yard fence. They also found shoe tracks corresponding with defendant's shoes. The pieces of newspaper were parts of a paper published in Chicago, called the "Ram's Horn," and the copy from which they were taken was of date June 16, 1900. Miss Freeman was getting this paper at the time she was shot, defendant having paid the subscrip-

tion for it for her for one year. After she had read each number of the paper, as it arrived, she testified that defendant or his wife would come to her house and get the paper and take it home with them. The morning after the shooting defendant's house was searched by Joe Gordan, the constable, and other parties, and he testified that they found a piece of paper lying in the floor near a chair which had been torn, and that they compared it with some of the gun wadding found at the place of shooting and the pieces fit each other exactly; and, by putting them together, you could read right across where the paper was torn as if it never had been torn. The torn paper found in defendant's house was the "Ram's Horn." The shots extracted from Miss Freeman's person and the pieces of gun wadding and a copy of the "Ram's Horn" were all introduced and shown to the jury. There were other circumstances proven of an inculpatory character, but the foregoing is, in brief, a concise summary of the main features of the evidence for the State.

The defense was alibi. Before the trial upon the merits, defendant's application for continuance, for the testimony of one O. R. McCoy, an absent witness, was overruled. This ruling of the court was again brought forward and made one of the grounds of defendant's motion for new trial. The application for continuance states: "The defendant expects to prove by the witness O. R. McCoy that he, the witness, was at defendant's house in Hood County, Texas, on the evening of August 9, 1900 [the evening or night Miss Freeman was shot], from 6 o'clock in the evening until 9 o'clock in the night of said day, and that defendant was at home, three and one-half miles from the place where Miss Freeman was shot, from the hour of 6 o'clock p. m. until 9 o'clock p. m. on the said evening, and that witness left defendant at his home at 9 o'clock on said night." The affidavit of the said absent witness O. R. McCoy was attached to defendant's motion for new trial, and in it he stated: "That affiant was to Dock Baines' house where Baines lived on the evening of the 9th of August, 1900, from about the hour of 5 o'clock on said evening until the hour of 9 o'clock in said night; and that Dock Baines was at his, Baines', home all the time between the said hours of 5 o'clock p. m. and 9 o'clock p. m. of said 9th day of August, 1900."

*Kearby & Kearby* and *Daniel & Keith,* for appellant.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at six years confinement in the penitentiary.

Appellant made a motion for continuance on account of the absence of O. R. McCoy and Jim White. The diligence used to procure the witness McCoy was sufficient. We do not regard the diligence as to White sufficient, nor was his testimony material. However, as shown

by the application for continuance, the testimony of McCoy was mate-
rial; that is, the State's case depended alone on circumstantial evidence.
Appellant's defense was an alibi. He lived some three or four miles
from the place where the shooting occurred. Both of the State's wit-
nesses who speak as to time place this at night, between 8 and 9 o'clock.
Minnie Freeman (prosecutrix) states: "I was shot on the night of the
9th of August, 1900, at my father's house, and in the yard that sur-
rounds the house." Mrs. J. O. Freeman states: "I was at home the
night that Minnie was shot. It happened about 8 o'clock." These were
the only two witnesses present at the time of the shooting, and neither
of them identifies the defendant as the party. The application for con-
tinuance alleged "that the absent witness, McCoy, would testify that he
was at defendant's house, in Hood County, Texas, on the evening of
August 9, 1900 (the evening or night that Minnie Freeman was shot),
from 6 o'clock in the evening until 9 o'clock in the night of said day,
and that defendant was at home, three and one-half miles from the
place where Miss Minnie Freeman was shot, from the hour of 6 o'clock
p. m. until 9 o'clock p. m. of said evening, and that witness left defend-
ant at his home at 9 o'clock on said night." This application was over-
ruled. In connection with the motion for new trial on the ground of
erroneously overruling the application for continuance, appellant ap-
pended the affidavit of this witness, McCoy, who swore "that he was a
citizen of Parker County on the 20th of October, 1900, and before that
time; that he was acquainted with Dock Baines, who resided in Hood
County, Texas; that affiant was at Dock Baines' house, where Baines
lived, on the evening of the 9th of August, 1900, from about the hour
of 5 o'clock of said evening until the hour of 9 o'clock in said night, and
that Dock Baines was at his (Baines') home all the time between the
hours of 5 o'clock p. m. and 9 o'clock p. m. of said 9th day of August,
1900." In that connection is also appended the affidavit of Mrs. Baines,
stating that there were some business matters between her husband and
said McCoy, and that, of her knowledge, McCoy had visited her hus-
band during the preceding March in relation to said business matters.
The statement of facts shows, also, that on the night of the shooting
Mrs. Baines, the wife of appellant, was absent from home. It will be
seen from this statement that the testimony of McCoy as to the alibi
directly and pertinently meets the State's case. The statement con-
tained in the absent witness' affidavit is unequivocal, and covers the en-
tire space of time fixed by the State in the commission of the offense,
and, if McCoy's affidavit is untrue, he is undeniably guilty of perjury.
It is insisted, however, that the State's case, though depending on cir-
cumstantial evidence, is exceedingly strong on the question of identity,
and that in the face of this testimony the evidence of alibi is not prob-
ably true, and that it is competent and proper for this court to so de-
clare; and a number of cases have been cited in which we have so held.
Where an affidavit of the absent witness has been produced on motion

for new trial, showing absolutely that he would testify to the facts set up in the application, we do not think any case can be found where we have assumed the . prerogative of saying that the testimony was not probably true. To so hold, it seems to us, would be not only to usurp the functions of the jury, but to announce in advance that the absent witness had committed perjury. In our opinion, on the showing made, the judge should have granted the motion for new trial. Hull v. State (Texas Crim. App.), 47 S. W. Rep., 472.

We have examined the other errors assigned, but do not believe that any of them are well taken. On account of the action of the court in overruling the motion for continuance, and then refusing to grant a new trial on that ground, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE (dissenting).—I feel constrained to dissent from the opinion of the majority; for, as I understand the opinion, it changes the law with reference to applications for continuance. If defendant makes application for continuance, diligence being shown, if the absent testimony is material and probably true, same should be granted; otherwise, it should be overruled. However, it appears in this case that a different view is taken. Appellant was tried for assault with intent to murder. The evidence, although circumstantial, was of that conclusive character that it shows beyond a reasonable doubt that defendant is guilty of the attempted homicide. Upon the trial appellant made a motion for continuance for the want of the testimony of an absent witness, by whom he expected to prove an alibi. The court overruled the application. Subsequently on motion for new trial appellant attached an affidavit of the absent witness, stating that he would have sworn to the alibi as set up in the application for continuance. The court, as I understand the opinion, decides that the fact that the absent witness, subsequently to the trial, makes an affidavit that he would swear to the facts as insisted by appellant in his motion for continuance, changes the rule in reference to granting continuances, and in refusing to grant a new trial on the ground of said continuance being overruled. There is no authority in any law book for this proposition. In the opinion of the majority is found the following language: "Where the affidavit of an absent witness has been produced on motion for new trial, showing absolutely that he would testify to the facts set up in the application, we do not think any case can be found where we have assumed the prerogative of saying that the testimony was not probably true. To so hold, it seems to us, would be not only to usurp the functions of the jury, but to announce in advance that the absent witness had committed perjury." In reply to this it is only necessary to say that no decision can be found in any book, decided by any court, holding that the fact that the absent witness makes affidavit to the facts set up in the application for continuance changes the rule in reference to an ap-

plication for continuance. The only authority cited by the opinion of the majority is Hull v. State (Texas Criminal Appeals), 47 Southwestern Reporter, 472. That decision has nothing to do with this proposition. It lays down the simple proposition that alibi is material testimony, and in that case it was material testimony. But before us we have a very different case. The evidence is of such a conclusive character as to make a case of circumstantial evidence, as above said, as strong as any case that can be found in the books. Appellant moves the court to grant him a new trial because of the want of the testimony of an absent witness, whose affidavit he attaches, to the effect he will swear that defendant was not present at the time of the attempted homicide. In Lillard v. State, 17 Texas Criminal Appeals, 119, it was strenuously insisted by appellant that the statute giving discretionary power to the trial judge to grant or refuse a continuance, and also discretionary power to grant or refuse a new trial, was unconstitutional and void. The argument advanced by appellant's counsel being that such power deprives the citizen of the right to have compulsory process for his witnesses. Judge Willson, for the court, said: "We have been much interested in the able brief and argument of counsel for appellant upon this question, and have maturely considered the same. Without entering upon an elaborate discussion of the subject, we will briefly state the conclusion at which we have arrived: (1) The statute claimed to be unconstitutional (Code of Criminal Procedure, article 560, subdivision 6) does not deprive the accused of the right to have compulsory process for his witnesses (Bill of Rights, section 10), nor does it impair such right. (2) It does not deprive the accused of the right of trial by jury (Bill of Rights, section 15). (3) The Legislature has full power to regulate continuances and new trials. There is no provision in the Constitution which denies or limits such powers. In the case at bar, the accused had compulsory process for his witnesses and had a trial by a jury. He was not deprived of either of those constitutional rights. We are of opinion that the court did not err in refusing this application for continuance, nor in refusing to grant him a new trial. Conceding that the absent testimony was material, we think the trial judge was well warranted in holding that it was not probably true. When considered with reference to the evidence adduced on the trial it could not be reasonably contended that the facts stated in the application for continuance were probably true. There has been no abuse of the discretionary power of the trial judge in this matter, as far as we can perceive from the record before us. With unvarying uniformity the proposition of law announced above has been followed by this court, as well as all the courts of last resort, as far as I have been able to find; and the fact that the absent witness files an affidavit corroborating the affidavit of appellant, does not change the proposition that this court must necessarily pass upon the probable truth of the application, in the light of the record before us. This position is strengthened by the decision in Land v. State, 34 Texas Criminal Reports, 330, in which the

court held: "Where, on a trial for robbery, a witness for defendant was taken sick and went home, and defendant made a motion to postpone or continue the case for said witness, in which motion he stated the facts expected to be proved by said witness, which motion was overruled; and defendant again, after conviction, assigned said ruling as one of the grounds of his motion for new trial; held, that the court on appeal will not reverse the judgment on account of the refusal of a postponement or continuance, unless, in connection with the other evidence adduced on the trial, they are impressed with the conviction not merely that defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to defendant would have resulted. And, held further, that the evidence being amply sufficient to sustain the conviction, independent of the matters proposed to be proved by the absent witness, the motion for new trial was properly overruled." And again, in Gallagher v. State, 34 Texas Criminal Reports, 306, it was held: "That on appeal, where the testimony set out in the application for continuance, considered in connection with the evidence adduced on the trial, appears not probably true, or that if it had been testified as stated, it is not probable that the testimony would have affected the trial more favorably to defendant, then it was proper for the court to refuse to grant the continuance." Does the fact then, in the light of this line of decisions, and the books are replete with similar cases, that the absent witness gives appellant an ex parte affidavit, swearing to the fact that he would corroborate the appellant's statement in his application for continuance, strengthen the proposition that the application is probably true? How can it? When appellant was arraigned for trial, he asked for a continuance for the want of the testimony of the absent witness, by whom he expected to prove an alibi. The court overruled the application; heard the evidence; the testimony precluded the truth of this application, showing it was not probably true; that is to say, the testimony showed appellant was guilty beyond any reasonable doubt. Now then, the court, as I understand the opinion of a majority, hold: That if the absent witness will come up in each instance and swear to the facts appellant states in his application he expects to prove by said witness, then it would be invading the province of the jury not to grant the continuance. In other words, this court is constrained to reverse every case where a new trial is refused, if appellant attaches to his motion for new trial the affidavit of the absent witness, swearing to the facts as detailed in his motion for continuance. This is an innovation, abrogation, change and perversion of the statute in reference to applications for continuance and motions for new trial. This court should not reverse a judgment on account of the refusal of a postponement or continuance, unless, in connection with all the other evidence adduced on the trial, it is impressed with the conviction, not merely that defendant might not probably be prejudiced in his rights by such ruling, but that it was probable, if the absent

testimony had been before the jury, a verdict more favorable to defendant would have resulted. Goldstein v. State, 32 Texas Crim. Rep., 112; Hyden v. State, 31 Texas Crim. Rep., 401; and numerous other cases. In McAdams v. State, 24 Texas Criminal Appeals, 86, and Mitchell v. State, 36 Texas Criminal Reports, 279, the rule which should govern trial courts in passing upon an application for continuance, and subsequently upon motion for new trial, was stated by the court, as follows: "If there is such conflict between the inculpatory facts and those set forth in the application as to render it improbable that the facts stated in the application are material and probably true, the continuance should be refused; and hence, a new trial based thereupon should also be refused. There must, however, not only be such a conflict, but the inculpatory facts must be so strong and convincing as to render the truth of the facts set forth in the application improbable." Now, reverting to the facts of this case, I wish to say that appellant swore in his application he could prove by the witness McCoy that he was not present at the scene of the attempted homicide. In passing upon this application, it must be remembered, there is a long line of decisions holding the court would not err in refusing same, if the proposed absent testimony is not material or not probably true. Subsequently, on motion for new trial, in the light of the record and the testimony adduced upon the trial, if the testimony is not material, or not probably true, this court has uniformly held that the trial court would not err in refusing a new trial. And the fact that the absent witness files an ex parte affidavit that he would have sworn as the application for continuance stated he would, does not and can not change the proposition that this court of last resort must pass upon the materiality and probable truth of the absent witness' affidavit, in conjunction with the motion for new trial and application for continuance. Why not? If forty witnesses swear to a fact, and it is not probably true, it does not render it any more probably true because forty witnesses swear to the fact. The fact that appellant and an absent witness swear to a fact that is not probably true, does not make it probably true. Nor does it invade the province of the jury, as stated in the original opinion, for this court to pass upon the question; but under the statutes and decisions of this court, this court has uniformly passed upon and felt constrained to so pass upon it. The question of jury or no jury has nothing to do with it. If the application is material and probably true, this court must reverse the judgment. The opinion in this case stands out without precedent in legal jurisprudence in Texas, and I dissent therefrom