### WILLIE THOMAS v. THE STATE.

No. 3439. Decided April 10, 1907.

**1.—Theft From the Person—Continuance—Alibi.**

Where upon trial for theft from the person, defendant's application for continuance showed due diligence, and the testimony of the absent witness was material in sustaining defendant's claim of an alibi as set out in the motion for a new trial, the continuance should have been granted.

**2.—Same—Case Stated—Insufficient Evidence.**

See opinion, where upon trial for theft from the person, the evidence showed that the property alleged to have been stolen could not have been taken without defendant's knowledge at the time of the taking, and that the conviction could not be sustained. Henderson, Judge, dissenting.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of theft from the person; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*B. F. Cook, Martin & George,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for theft from the person, the punishment being five years confinement in the penitentiary.

Appellant is a negro woman. The State's theory of the case is that she took $60 odd dollars from the pocket of a young man named Handy while they were in the act of sexual intercourse. Appellant's defensive theory was alibi, and she introduced quite a lot of testimony in support of her contention. She was notified of the indictment Saturday evening; on Monday she issued process for her witnesses. The indictment was returned in court on the 8th; process was issued for her witnesses on the 10th, which was executed on the 11th, and returned on the 13th. The judgment was rendered on the 13th. Application was made for a continuance for Mrs. Corder, by whom she expected to prove that about the hour and at the time that she should have had intercourse with Handy, and taken his money from his pocket, she was at the millinery establishment of Mrs. Corder, making a contract with Mrs. Corder in regard to making a dress. This was about 2:30 o'clock in the evening. This testimony supplies a strong link in her alibi evidence, and it is alleged that Mrs. Corder is a white woman of character, etc., and her testimony would have had great weight perhaps with the jury. Without going into a detailed statement of appellant's peregrinations around the town of Thurber, where the transaction occurred, if Mrs. Corder's testimony is true and she files her adffiadvit in connection with the motion for a new trial, showing that she would so testify, it was an important matter, appellant being a negro woman and most of her witnesses being negroes, and Mrs. Corder a white lady. This was the first application, and all the diligence necessary was used to obtain the testimony of the absent witness. We are of opinion that this application should have been granted.

It is contended that the evidence is not sufficient to sustain the conviction. The main witness, prosecutor Handy, after testifying that he went to her house, admits she was a prostitute; that arrangements were made and executed in regard to the act of sexual intercourse. Immediately in that connection the record shows this in regard to Handy's testimony: "Tell what you did there." Witness to the court: "Must I answer that question." Court: "Yes, sir, it is proper." A. "I was just having carnal intercourse with her. We got on the bed. She got on the bed first. She laid down on the bed. She got

on the bed on her back." Q. "What did you do." A. "That is not a fair question. Well, I just got on the bed and had carnal intercourse with her and she put her hand in my pocket. She put her left hand in my right hand pocket. My purse was in that pocket. That is, the purse I had in the pocket. I had $66.10 in it at that time. She slipped her hand in my pocket and I put my hand on that pocket and my purse was about half way out of the pocket and she jerked her hand out when I put my hand on my pocket, and put it in her apron pocket. And she says I ain't going to get your money and held up her empty hand, and in a few minutes I went to the blacksmith shop. and the blacksmith told me to pay the stable manager for fixing my wagon, and when I went there to pay him I run my hand in my pocket and pulled out my purse and it was open and the $65 was gone. The purse was just unsnapped. I paid that woman one dollar for that act of intercourse. I suppose I had gone between one half and one mile from her house before I missed my money. I had never seen this defendant before that time." This evidence is, to say the least of it, very unsatisfactory. The court submitted the case on that allegation in the indictment which charged that she took the money without the knowledge and consent of Handy. In McLin v. State, 29 Texas Crim. App., 171, which was in many respects a similar case, the court held the evidence not sufficient. The facts in the McLin case are thus recited in the opinion: "Priddy himself is the only witness who knew anything about and testified as to the attendant circumstances and the manner of taking. Having told about his going up into the room, lying down with clothes on and going to sleep, he says: 'After I had slept some time I was awoke by defendant putting his hand in my pants pocket, which was tight, where I had my purse with the money in it. I was lying on my back. I felt him as he shoved his hand on down into my pocket, and he then pulled my purse out of my pocket with the money in it. As he drew my purse and money out of my pocket I caught hold of his hand and took my pocket book from him, and said, "That don't go," and took my pocket book from him and put it back into my pocket and went to sleep again. Defendant was standing by my bed the last I remember before I went to sleep the second time.' " Under this statement of facts the court in the McLin case held the evidence insufficient, and said, "In Flynn v. State, 42 Texas, 301, the pocket book in the pocket of the owner was seized by the accused, who inserted his hand into the pocket without the knowledge or consent of the owner. He had drawn the book half way out of the pocket when, upon being detected in the act, the accused relinquished his hold upon it, and it was held that these facts constituted theft from the person under our statute. And so in Green v. State, 28 Texas Ct. App., 493, the purse had been taken, and defendant's offense was complete before the owner knew that the property had been taken from him. Not so in this case. Here Priddy testifies: 'I felt him as he shoved his hand on down into my pocket.'

He then knew defendant was shoving his hand into his pocket, and he knew this before defendant had taken the purse. Had defendant's hand taken hold of the purse in the pocket before Priddy knew what defendant was doing, then, indeed, under the Flynn case, supra, the offense would have been complete and the conviction would have been supported by the evidence. But defendant's offense was not complete, and Priddy knew what he was doing before it was completed, that is, before the defendant had taken the property." Now, under the facts in this case, the witness Handy testified: "Well, I just got on the bed and had carnal intercourse with her, and she put her hand in my pocket; she put her left hand in my right hand pocket. My purse was in that pocket; that is, the purse I had in the pocket. She slipped her hand in my pocket and I put my hand on that pocket and my purse was about half way out of the pocket, and she jerked her hand out when I put my hand on my pocket, and put it in her apron pocket. And she says I ain't going to get your money and held up her empty left hand and in a few minutes I went to the blacksmith shop." It would seem that under the authority of the McLin case, if Handy knew that appellant put her hand in his pocket and before reaching the pocket book, he knew of her object and purpose; that is, he knew her hand was in his pocket, and his pocket book was in that pocket, in that attitude of the case appellant would not be guilty of theft from the person. If he did not know that her hand was in the pocket until it had grasped the pocket book and was undertaking to pull it out, then under the Flynn case, supra, she would be guilty, but it seems fairly certain that Handy knew that appellant's hand was being inserted in the pocket before it reached the pocket book, and that as she pulled it out and when it was about half way out he caught her hand.

Another fact in this case may also be noticed. Handy testified that his pocket book had a clasp and was clasped tightly when he put it in his pocket before he went to appellant's house. Now, in order for appellant to have gotten Handy's money out of that pocket book with her left hand, she would have had to unclasp the pocket book in his pocket and take out the $65 while the pocket book was still in his pocket. This must have taken some time and some work on the part of appellant's left hand to have reached in the pocket, gotten hold of the pocket book, unclasped it and inserted her fingers through the apartments of the pocket book and taken out the money. The witness states that she was pulling the pocket book out at the time he caught her hand. Therefore, it might be reasonably presumed that she had not extracted the money from the pocket book at the time, for if she had it was unnecessary to have been pulling the pocket book from his pocket. Whatever may be said, however, of the manner of manipulating the pocket book, still the question remains that if Handy knew appellant's hand was being inserted in his pocket and before it reached the pocket book, seized it, then the allegation that it was taken with-

out his knowledge would not be proved, and the State's case would fall under the authority of McLin v. State, cited. This testimony should be made clearer upon another trial, and if it should develop as .it did upon the trial shown by the statement of facts, then we are of opinion the State's case has failed under the authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE.—I concur with the majority of the court in a reversal of the case, because of the overruling by the court of appellant's motion for a continuance, which is made a ground in the motion for a new trial. While the appellant had a number of witnesses to prove his alibi, it appears that one witness Mrs. N. N. Corder, who had been served with process, was not present. Her affidavit is in the record showing that she would swear that appellant was at her house right after 2:30 p. m. in the evening of the day of the alleged theft. She lived about a mile from the scene of the theft, and the prosecutor places the occurrence at about 2:30. Under the circumstances, I believe appellant was entitled to a continuance of the case, or at least a postponement until said witness could be procured. See Baines v. State, 42 Texas Crim. Rep., 510.

However, I do not concur in the view of the majority of the court, as strongly intimated, if not expressed, that the evidence does not sustain this conviction. The charge is theft from the person, and the indictment alleges in one count that "appellant fraudulently and privately took from the possession and person of B. D. Handy and without his knowledge and consent and so suddenly as not to allow time to make resistance before said property was carried away, the $65 in money," etc. This method of pleading under this statute is allowable, as the taking without the knowledge and so suddenly are not antagonistic but are phases of the same method or character of taking, and they are alleged here conjunctively. See Steele v. State, 10 Texas Ct. Rep., 983. Now, was this taking without the knowledge of prosecutor or so suddenly as not to allow time for interference? This question has been before the court in a number of cases. It has been held that the property need not be carried away; that the asportation is sufficient if the party attempting to take the property has it in his hand, though the hand be not withdrawn from the pocket. See Dukes v. State, 22 Texas Crim. App., 193. In Flynn v. State, 42 Texas, 301, the prosecutor was aware that the defendant's hand was in his pocket, and asked him what he was doing. This was held a sufficient asportation as well as a sufficient taking without the knowledge of the prosecutor. In Green v. State, 28 Texas Crim. App., 493, the prosecutor Tolliver felt some one touch his pocket, which contained his purse, and this attracted his attention; looking around quickly he saw Green's (defendant's) hand passing from his (prosecutor's) pocket to his (defendant's) pocket, and saw in his hand his purse containing the

money, etc. Prosecutor said nothing to defendant, believing he was in jest. The money was not returned and the pocket book was afterwards found lying upon the ground near the place where defendant was standing when Tolliver stopped him and charged him with having taken it. A $5 bill was taken out of the purse. The contention here was that prosecutor knew defendant had taken the purse, and by resistance could have prevented him from carrying it away, and that this being so, the crime was not theft from the person. It is said in the opinion, however, that the purse had already been taken without Tolliver's knowledge and suddenly; that he had it already in his possession when discovered and that the offense was complete. Now, in McLin v. State, 29 Texas Crim. App., 171, which appears to be invoked by a majority of the court, the prosecutor said after he had slept some time he was awakened by defendant putting his hand in his pants pocket which was tight, where he had his purse and money in it. "I felt him shove his hand on down into my pocket, and he then pulled my purse out of my pocket with the money in it. As he drew my purse and money out of my pocket I caught hold of his hand and took my pocket from him, and said, 'That don't go.'" The court say in passing on this question the prosecutor knew defendant was shoving his hand into his pocket, and he knew this before defendant had taken the purse, and the judgment appears to have been reversed upon the proposition that prosecutor knew in that case that appellant's hand was being shoved into his pocket before he actually seized the pocket book. It occurs to me that this case is not in line with the other cases mentioned, especially the Green case, supra, and if followed the effect would be to nullify this statute. To illustrate, if A is conscious that B is running his hand into his pocket, and instantly the pocket book is seized, the mere fact that he knew a moment before the pocket book was seized that B had his hand in his pocket, would nullify the prosecution would be a strange doctrine; but as I understand that case, it intimates that if there had been in the indictment an allegation that the act was done so suddenly as not to allow time for interference, that the prosecution might have been maintained. I certainly agree to the proposition that if a party has knowledge that he is being robbed, or his money is being taken out of his pocket, if he believes it is in jest or if he is too stupid to interfere, it is not theft without knowledge. See Roquemore v. State, 99 S. W. Rep., 550. But I insist where a person may have knowledge a moment before the purse is seized, that the thief has his hand in his pocket but same is taken instantly, that the offense of taking without knowledge is complete. Certainly it would be complete in view of the other portions of the statute if after the prosecutor knows that the thief has his hand in his pocket he snatches the purse so suddenly as not to allow time for interference. This allegation is contained in this indictment. The proof here showed that the prosecutor while copulating with appellant had his pocket book containing $66.10 in his pocket;

that appellant slipped her hand in his pocket, and he at once put his hand on that pocket, and his purse at the time was about half way out of the pocket, and she jerked her hand out and put it in her apron pocket, and said: "I ain't going to get your money," holding up her left hand at the time; that he did not at the time miss his pocket book, nor did he know of the loss thereof until some time after he had left the house and had gone to the blacksmith shop. Does this show that he had knowledge that when she was slipping her hand in his pocket that she already had seized the pocket book, or that she had extracted the money out of it and taken it from his pocket, or if it be conceded that he had knowledge that she was slipping her hand in his pocket to steal, does it not show that he interfered as speedily as was possible. It occurs to me there can be no question about one of these propositions being true: either she took his money without his knowledge, or she took it so suddenly as not to allow opportunity for interruption. I am not willing to nullify this statute regarding theft from the person by such subtilty of construction as will render any prosecution under it abortive.