[No. 2060]

# STATE OF NEVADA, RESPONDENT, *v.* ALBERT NELSON, APPELLANT.

1. CRIMINAL LAW—CONTINUANCE—RIGHT TO CONTINUANCE.
   To entitle an accused to a continuance on the ground of the absence of witnesses, it must appear that the witnesses are really material, that the accused has been guilty of no negligence, and that the attendance of the witnesses can be had at the time to which the trial is deferred.

2. CRIMINAL LAW—APPEAL—DISCRETION OF TRIAL COURT.
   The question of continuance in criminal cases is always a matter within the sound discretion of the trial court, and, unless that tribunal abuses its power, its determination cannot be reviewed on appeal.

3. CRIMINAL LAW—CONTINUANCE—ABSENT WITNESSES—DUE DILIGENCE.
   An affidavit for a continuance on the ground of the absence of material witnesses, which alleged that subpenas had been placed in the hands of the sheriff, shows the very slightest diligence.

4. CRIMINAL LAW—CONTINUANCE—ABSENCE OF WITNESSES.
   Where an affidavit for continuance on the ground of the absence of witnesses showed that there was another witness by whom the same facts could be proven, it was not an abuse of discretion on the part of the trial court to refuse the continuance.

5. CRIMINAL LAW—CONTINUANCE—ABSENCE OF WITNESSES.
   Where an affidavit for a continuance on the ground of the absence of material witnesses showed that the witnesses were out of the jurisdiction of the court, and failed to give any reasonable ground for the belief that their attendance could be procured at some subsequent term, the refusal of a continuance was not an abuse of discretion, particularly where the testimony at the trial showed that the names of the witnesses were not correctly stated in the affidavit, and that the facts could be proven by another disinterested witness.

6. CRIMINAL LAW—APPEAL—HARMLESS ERROR.
   In a criminal prosecution, the improper admission of evidence of the description of the criminal, given to the arresting officer by a third person, was harmless, where it appeared that the officer received and acted on the description given directly to him by the prosecutrix.

7. CRIMINAL LAW—DEFENSES—INSANITY.
   Notwithstanding Rev. Laws. sec. 7163, providing that a defendant in a criminal action is presumed to be innocent until the contrary be proven, and in case of reasonable doubt as to his guilt he is entitled to be acquitted, an accused person, relying on the defense of insanity, has the burden of proof, and must satisfy the jury by a preponderance of the evidence that he is insane, there being a presumption of sanity.

8. RAPE—PROSECUTION—EVIDENCE—ADMISSIBILITY.
   In a prosecution for assault with intent to rape, evidence
   *held* sufficient to show that accused was the guilty person.

APPEAL from the Fourth Judicial District Court, Elko
County; *E. J. L. Taber*, Judge.

Albert Nelson was convicted of assault with intent to
commit rape, and he appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Hale & Fee* and *R. H. Hairston*, for Appellant.

*Geo. B. Thatcher*, Attorney-General, for Respondent.

By the Court, MCCARRAN, J.:

Defendant in this case was indicted by the grand jury
of Elko County for the crime of assault with intent to
commit rape. The crime with which the indictment
seeks to charge the defendant is alleged to have been
committed on the 12th day of September, 1912.

1. As appears from the record, R. H. Hairston, Esq.,
was appointed by the court as attorney for the defendant,
and on the 14th day of October the defendant, through
his attorney, moved the court for a continuance of the
trial of the cause, and in support of his motion filed his
affidavit, setting forth in substance that he was the
defendant in the above-entitled action; that he could not
safely proceed to trial at the present term of the court
on the ground that certain witnesses were absent, who
resided in San Francisco, State of California; that the
cause could not be tried with justice to affiant without
the testimony of the said witnesses; that the said
witnesses were material witnesses to the defendant;
that the defendant would rely upon the defense of an
alibi, and that the testimony of said witnesses was
material in support of that defense; that the defendant
had been in the company of the witnesses named, from
the time of his arrival in the town of Elko until a few
minutes before he was arrested; further setting forth as
follows: "That affiant will prove by said George Fisher
and Nap O'Grimes that he was never at or near the place

where said crime is alleged to have been committed, and that affiant was at all times in their company. Affiant will prove by the said George Fisher and Nap O'Grimes that upon the day that said crime is alleged to have been committed, that he (affiant) and the said George Fisher and Nap O'Grimes were together, and were in Guldigar's saloon, and in a restaurant near Guldigar's saloon, the whole time, and affiant will corroborate said proof by the testimony of the bartender at Guldigar's saloon; that affiant has used due diligence to secure the testimony of the said George Fisher and Nap O'Grimes; he has caused counsel to place subpenas in the hands of the sheriff of the county of Elko, State of Nevada, but same were returned unserved; * * * that affiant believes the attendance or the testimony of the said George Fisher and Nap O'Grimes will be procured at the next term of this court, and that the grounds for such belief are as follows: Affiant knows the address of friends and relatives of the said George Fisher and Nap O'Grimes in San Francisco, Cal., and through them he will discover the whereabouts of the said George Fisher and Nap O'Grimes."

The motion for continuance having been denied by the trial court, and the cause regularly tried, and a verdict of conviction having been entered against the defendant, he thereafter moved the court for a new trial, setting up, as grounds in support of said new trial, the absence of material witnesses to establish the defense of an alibi. This motion having been denied, appeal is taken to this court from the judgment and from the order denying the motion for a new trial.

Appellant assigns error to the trial court for having overruled the motion for continuance, and in support thereof cites authorities. The question of continuance in criminal cases is one with which both text-writers and courts have variously dealt; and the rule laid down by Lord Mansfield in a very early case, setting forth three essential elements necessary to warrant a continuance, has been more or less generally adopted by courts in recent times. They are: First, that the witness is really

material and appears to the court so to be; second, that the party who applies has been guilty of no negligence; and, third, that the witness can be had at the time at which the trial is deferred. (*The King* v. *D'Eon,* 1 Blackstone's Rpts. 510; *People* v. *Vermilyea,* 7 Cow. N. Y. 369.)

The general rule, embracing the three elements herein set forth, has been enlarged upon to some extent, but the fundamental principle remains the same. From the very earliest times courts, in considering the question of continuance in criminal cases as well as in civil cases, have kept in mind certain essential elements as guides to the proper exercise of their discretion. In some jurisdictions it is expressly provided by statute that where the proof, which the accused expects to make by the absent witness, is material and cannot be satisfactorily made by other witnesses, and he has used due diligence to procure their presence, a continuance must be granted, unless the state will admit the truth of such evidence. Where statutes of this kind are found, they serve as a guide to the court in exercising its discretion in allowing or disallowing a continuance. Where it is shown that the evidence of the absent witness is material and admissible, and that the testimony, in view of the established facts, is not probably untrue, and that the attendance of the witness can probably be procured at another term, and that the facts expected to be proven cannot be obtained from other disinterested witnesses, these elements, together with the showing on the part of the moving party that he has exercised proper diligence to procure the attendance of the witness, have been generally accepted by the courts as essentials necessary to be established by the moving party, by reason of which the court would be authorized in granting the continuance. (9 Cyc. p. 172.)

2. The question of continuance in criminal cases is always a matter within the sound discretion of the trial court, and, unless the district court abused its discretionary power in refusing the continuance, its ruling upon

that phase of the case must be sustained.  By its spirit
and its humanity the law means to afford every reason-
able opportunity to defendants in criminal cases to obtain
their witnesses.  However true this may be, the moving
party is bound to give at least a reasonable assurance of
their attendance at the time proposed for the continuance,
and, if he fails in this respect, it is not an abuse of
discretion to deny the motion.

**3-5.** The affidavit filed in support of the motion in this
case, in our judgment, falls short of presenting the
requisites necessary to authorize the court in granting
the continuance prayed for.  In paragraph 5 of the
affidavit it is stated: "That upon the day that said crime
is alleged to have been committed the affiant and the said
George Fisher and Nap O'Grimes were together, and
were in Guldigar's saloon and in the restaurant near
Guldigar's saloon, the whole time, and affiant will cor-
roborate said proof by the testimony of the bartender
at Guldigar's saloon." Here it is disclosed at least one
other disinterested witness could have testified to the
facts sought to be elicited from the witnesses Fisher and
O'Grimes.  Moreover, the affidavit of the bartender at
Guldigar's saloon, referred to, might have been produced
in support of the motion, if the same were made in good
faith.

The affidavit, presumably with the view of showing
due diligence, sets forth that subpenas for the absent
witnesses had been placed in the hands of the sheriff
of Elko County.  Diligence which amounts only to the
issuance of a subpena may well be regarded as of the
very slightest.  (*State* v. *Chapman,* 6 Nev. 320.)

The affidavit itself shows that neither the defendant
nor his counsel had any knowledge or information as to
the whereabouts of the absent witnesses.  Moreover, the
affidavit fails to give any assurance that might be con-
sidered reasonable that the attendance of the witnesses
could be secured at any subsequent time.  There was
nothing stated in the affidavit from which the trial court
could have even inferred that there was a reasonable

probability that their attendance could be had within any proper time. The affidavit sets forth that the absent witnesses reside in San Francisco, State of California, and, if this were true, they were beyond the power of the court to reach by process of subpena, and it devolved upon the moving party to present some satisfactory showing that he had reason to believe that the absent witnesses could be produced at some definite time in the future. Moreover, the motion should be supported by the reasons for such belief. (*People* v. *Francis,* 38 Cal. 183; *State* v. *Chapman,* 6 Nev. 320.)

Appellant, in his own opening brief, relies on the case of *Baines* v. *State,* 42 Tex. Cr. R. 510, 61 S. W. 119, and especially to that part of the decision in that case as follows: "Where an application for continuance on account of the absence of material witnesses, coupled with an affidavit of such witnesses, showed due diligence in endeavoring to secure his presence and that his testimony, if true, would clearly prove an alibi for defendant, and showing absolutely that he would testify to the facts set up in the application, a continuance should be granted."

It is our judgment that, where such a set of facts is presented to the trial court, it would be an abuse of discretion, under such conditions, to deny a continuance at least for a reasonable time; but no such conditions present themselves in this case. In this case there is no affidavit of the absent witnesses, and no assurances as to what the absent witnesses would testify to if present. The affidavit of appellant in this case, filed in furtherance of his motion for continuance, sets forth the names of the witnesses desired as Nap O'Grimes and George Fisher, stating that these two men were fellow employees of his at the Peterson ranch, and left the ranch with him, coming to Elko. The witness Peterson, testifying in behalf of the defendant at the trial, stated that the defendant left his ranch with a man by the name of O'Brien and Fisher. From this it may be reasonably inferred that the appellant was in error as to the correct name of at least one of the witnesses sought, and hence

it is out of all probability, in the light of this and other statements in the affidavit, that the attendance of the absent witness could ever be procured.

The affidavit of appellant, filed in furtherance of his motion for continuance in this case, is fatally defective in that it fails to show that there were not other persons by whom the defendant could prove the same facts that he expected to prove by the absent witnesses. Moreover, the affidavit sets forth that the testimony sought to be obtained from the absent witnesses could in fact be obtained from another disinterested witness, "the bartender at Guldigar's saloon." (*State* v. *Marshall*, 19 Nev. 240.)

In view of the defects presented in the affidavit of appellant, filed in support of his motion for continuance, already referred to, and, further, in view of the defendant's own testimony at the trial and the testimony of other witnesses, presented in behalf of the defendant, as well as in behalf of the state, it is manifest that no injustice was done by denying the continuance asked for, and the trial court did not abuse its discretionary power.

6. The appellant assigns error to the trial court in overruling his objection to the testimony of the witness Manley. The record discloses the following:

Q. I will ask you at that time if the officers got any description of the man. A. The officers? I described the man. I told the officers.

Mr. Hairston (counsel for the defense)—I object on the ground it is hearsay.

The Court—I have been exceedingly liberal with the defendant, and I will allow the state to go into that.

Mr. Hairston—Note an exception.

The Court—Let an exception be noted.

The Witness—I did.

Mr. Dysart (District Attorney)—What description did you give as best you remember? A. Well, that this man had blue overalls, had on a light hat, something like the color of mine, and gave them the description the little girl gave me at the time.

Nels Ouderkirk, the arresting officer, interrogated as to descriptions given him prior to the arrest, testified as follows:

Q. After you got to the house I will ask you whether or not you received any description of the man who was alleged to have committed this offense. A. Yes, sir; from the little girl.

Q. I will ask you to relate that description as near as you can remember now. A. Well, the little girl tried to describe the man as near as she could. She said he had on a light-colored coat, as near as I can recollect. Mr. Harris was there—I think we got there—in there in a very few minutes.

Q. I will ask you whether or not she gave you any description of the appearance of his face. A. Yes; he had a little mustache.

Q. Did she—I will ask you if she described his hat. A. I think she said it was a slouch hat. I couldn't say what color the little girl said it was, but a slouch hat, light-gray coat, and overalls.

Q. Did she give you any description of his appearance—his personal appearance? A. She said he was thin in the face and with a light mustache.

Q. I will ask you whether or not she said anything about his walk—his gait. A. The little girl tried to explain to me the style of the man's walk, that he was inclined to be stooped.

From the testimony of the arresting officer, herein set forth, it appears that, whatever may have been said to him by the witness Manley as to the description the little girl had given Manley, he in fact received the description from the little girl herself prior to the arrest, and apparently acted upon the description as given by her, rather than upon anything else. From this it appears, in our judgment, that though the testimony of the witness Manley, objected to, was not properly admissible in the trial and ought to have been excluded, nevertheless the error in its admission appears to be harmless, and we fail to see where it could have played even the slightest

part in bringing about the conviction in this case. As has been said heretofore by this court, errors which do not actually prejudice or injure the defendant do not justify a reversal. (*State* v. *Williams*, 28 Nev. 421; *State* v. *Smith*, 33 Nev. 459.)

Counsel for appellant contends that the admission of the testimony of Manley over his objection deprived him of the privilege of cross-examination of the arresting officer, Ouderkirk. This contention, however, is not sustained by the record, for it appears that the officer, Ouderkirk, took the stand as a witness in behalf of the state, and testified as to the description given him and as to matters attending the arrest of the appellant, and at that time ample opportunity was given appellant for cross-examination.

7. Appellant assigns error to the trial court in refusing to give the following instruction: "The court instructs the jury that if any competent evidence is introduced by the defendant, tending to prove his insanity, that the state is bound to prove and establish his sanity, like all other elements of the crime, beyond a reasonable doubt." It will be observed that the court, in refusing the foregoing instruction, gave another in lieu thereof, which is as follows: "The defendant is presumed to be sane until the contrary is shown, and a doubt upon this question alone should not acquit, for insanity is an affirmative proposition, and the burden of proving it is upon the defense. It is not necessary, however, that the defendant show that he was insane beyond a reasonable doubt. With regard to the methods of proof by which the defense of insanity may be established, the law, from considerations of public policy and the welfare of society, proceeds with great caution, and has adopted a certain standard by which the insanity of the party on trial may be proved where relied on. The burden of proving insanity, as I have said, rests upon the defendant, and to warrant you in acquitting him solely upon that ground, his insanity at the time of the committing of the offense, if you find that he did commit it, must be established

by a preponderance of proof. The evidence of insanity must outweigh and overcome the presumption of and the evidence in favor of sanity in some appreciable degree, and render it more probable that he was insane, than that he was sane. The proof must be such in amount that, if a single issue of the sanity or insanity of the defendant should be submitted to the jury in a civil case, they would find that he was insane."

In dealing with insanity as a defense to crime, four theories have been expounded as to the degree of evidence requisite to justify an acquittal. The first theory is that, where insanity is interposed as a defense, it being one of the nature of confession and avoidance, it must be established beyond a reasonable doubt. This doctrine is adhered to in many jurisdictions. The second theory is that the jury are to be governed by a preponderance of evidence, and are not to require the insanity of the defendant to be made out by him beyond a reasonable doubt. It will be observed that this rule is adhered to more closely by the English courts. (*The King* v. *Leighton*, 4 Cox, 149; *The King* v. *Higginson*, 1 Car. & K. 130.)

The same rule has been subscribed to in many of the states of the Union. (*State* v. *Lawrence*, 57 Me. 574; *Commonwealth* v. *Rogers*, 7 Metc. Mass. 500, 41 Am. Dec. 458; *Coyle* v. *Commonwealth*, 100 Pa. 573, 45 Am. Rep. 397; *Baccigalupo* v. *Commonwealth*, 24 Va. 807, 36 Am. Rep. 795; *State* v. *Strauder*, 11 W. Va. 747, 27 Am. Rep. 606; *State* v. *Felter*, 32 Iowa, 49; *People* v. *Walter*, 1 Idaho, 386.)

The third theory is that, where insanity is interposed as a defense to the commission of a crime, the prosecution must prove sanity beyond a reasonable doubt. This rule, generally speaking, has been followed with more or less uniformity by the federal courts. (*Davis* v. *U. S.*, 160 U. S. 469, 19 Sup. Ct. 353, 40 L. Ed. 499; *German* v. *U. S.*, 120 Fed. 666, 57 C. C. A. 128.) Under this general theory, adhered to by many courts, it has frequently been ruled that where there is a reasonable doubt as to the sanity the jury must acquit. The fourth theory holds to the effect that where the defense of insanity is set up, in

the nature of a plea of confession and avoidance, if the evidence is equally balanced as to the sanity or insanity, the general presumption of sanity does not prevail, and if, from all the evidence, there is a reasonable doubt as to the sanity of the accused, he is entitled to an acquittal.

We do not deem it necessary, in this case, to discuss the relative merits of the four theories herein set forth.

The able opinion rendered by Judge Hawley, speaking for this court in the case of *State* v. *Lewis*, 20 Nev. 334, established the rule, which has since been followed by this court in its several decisions, and we see no occasion to change that rule. By this decision this court placed itself in line with those other jurisdictions subscribing to the rule that the jury are to be governed by a preponderance of evidence, that the defendant is presumed to be sane until the contrary is shown, and a doubt upon this question alone should not acquit. The rule adhered to by other courts, especially in English jurisdictions, was modified by the rule laid down by this court in the Lewis case, *supra*, in that it is not necessary that insanity be established beyond a reasonable doubt; but, insanity being an affirmative proposition, the burden of proving it is upon the defense, and he is required to establish his insanity by a preponderance of evidence. The instruction complained of in the case under consideration is one very similar to the instruction dwelt upon in the Lewis case, *supra*, and the general proposition of law therein contained was approved in that decision. We see no good reason at this time for changing the rule.

Before a conviction can be had in a criminal case, before a jury can be warranted in bringing in a verdict of conviction, regardless of what defense may be interposed, the law lays down a standard that they must be satisfied beyond a reasonable doubt of the truth of the charge in its entirety. (Rev. Laws, 7163.)

When a defense of insanity is interposed, proof of that defense is receivable by the trial court under the general rules of evidence applicable. It is for the jury, and not the judge, to say whether or not the defense is proven

and the evidence of insanity, together with all the other facts and circumstances supported by the evidence in a case, go to the jury, and if the evidence as a whole, or any element of evidence, raises a reasonable doubt as to the guilt of the accused, he is entitled to the benefit of that doubt to the extent of an acquittal or reduction of degree. As heretofore laid down by this court in the several cases, and as approved by many courts throughout the land, it is not necessary for the accused, who relies upon a defense of insanity, to prove that condition of mind beyond a reasonable doubt, nor is it necessary for him to satisfy the jury of his insanity. To say that he must satisfy the jury of his insanity would be to require of him more than preponderance of evidence. To require the accused to satisfy the jury of his insanity would be to free the minds of the jury from the element of doubt upon that subject. This is not required. (*Kelch* v. *State*, 55 Ohio St. 146, 45 N. E. 6, 39 L. R. A. 737, 60 Am. St. Rep. 680.) In other words, under the rule as laid down in the Lewis case, *supra*, and approved by this court in later decisions, and commented upon and approved by courts of other jurisdictions, it is not required of a party interposing a defense of insanity to do more than establish that condition of mind by evidence which preponderates in favor of insanity; *i. e.*, taking everything submitted into consideration, a belief of insanity is enforced by the evidence.

The decision of this court in the Lewis case, *supra*, has been commented upon and cited approvingly by many of the courts of last resort. (*Maas* v. *Territory*, 10 Okl. 716, 63 Pac. 960, 53 L. R. A. 814; *State* v. *Quigley*, 26 R. I. 263, 58 Atl. 905, 61 L. R. A. 322, 3 Ann. Cas. 920; *State* v. *Clark*, 34 Wash. 485, 76 Pac. 98, 101 Am. St. Rep. 1006; *People* v. *Dillon*, 8 Utah, 97, 30 Pac. 150.)

In the case of *Maas* v. *Territory*, *supra*, the Supreme Court of Oklahoma paid a high tribute to the opinion written by Chief Justice Hawley in the case of *State* v. *Lewis*, but in refusing to concur that court said: "With the development of criminal law and the advancement of

civilization, the rules which once governed the defense of insanity are being relaxed, so as to give defendants the fullest opportunity to present the truth to the court and jury, that full justice may be done; and while it is true that this defense is sometimes successfully manufactured and imposed upon courts and juries, the adjudicated cases show no greater abuse of this defense than of the defense of alibi or self-defense. The defense of insanity, when successfully made, appeals to the tenderest sentiments and mercies of the jury; but when feigned and detected it invites their utmost contempt, and, while juries are always ready to deal kindly with one who is so unfortunate as to be dethroned of his reason to such an extent that he cannot distinguish between right and wrong, they are also, as a rule, quick to punish a guilty defendant who tries to escape the consequences of his act through fraud and deceit. Therefore * * * we see no good reason why the defense of insanity should be singled out and governed by rules as to burden of proof, different from those applicable to other cases."

No science has advanced with more rapid strides and none has produced more fruitful results in recent years than that of medicine and surgery; and with the development of that science, and the disclosures brought about by its achievements, the veil has been lifted from many things tending to disclose the reasons for abnormal and peculiar acts and eccentric movements of beings. The darkness in which humanity groped in ages past, and by reason of which the world condemned the acts of the individual for the breach of the law, and especially for the abnormalities that appear prevalent in him, is being cleared away by the hand of science, and with the light of knowledge there comes the ever-increasing ray of human sympathy and a persistent study and research as to how this sympathy should best be applied. The great minds of the world, who keep abreast of the times and of development of science, are devising and advancing theories, means, and methods by which the great question of criminology can best be handled. The courts of

the land, in dealing with this great subject, cannot stand by and hold a deaf ear to the march of science. The rules which once governed, according to the standards best considered, must not remain rigid; but their elasticity must be made commensurate and proportionate to human achievement and the definite results of scientific investigation.

**8.** The identity of the defendant was amply established, not only by the prosecuting witness, the little girl on whom the crime is alleged to have been attempted, but by other witnesses, who by reason of their opportunity for observation, as disclosed in the transcript, established beyond a shadow of a doubt that it was the defendant who accompanied the little girl to the lonely excavation indicated by her in her testimony. The testimony of Mrs. Davis, who lived in the near proximity, was to the effect that she saw him put the little girl down into the excavation. Other parties saw her running from the place in a condition of excitement.

The evidence in this case discloses a most peculiar set of circumstances. The defendant, accompanied by the little girl, went to the lonely excavation north of the town of Elko. After arriving there, in so far as the record discloses, he did nothing in the way of an act of violence. The little girl appears to have run away from the place, and he did nothing to prevent her going; in fact, his entire conduct, as disclosed by the record in this case, bears out to some extent at least the testimony of those witnesses who testified that they regarded him as being of unsound mind. While it is our conclusion that the judgment in this case should not be reversed, yet the record discloses facts and evidence worthy of an investigation by those invested with the power of executive clemency.

From the foregoing reasoning and observations, we see no good reason for disturbing the judgment in this case. It therefore follows that the order denying defendant's motion for a new trial should be affirmed.

It is so ordered.